UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CECILLE VILLACORTA,                     :
                        Petitioner,     :
                                        :    10 Civ. 9516 (DLC)
            -v-                         :
                                        :    OPINION & ORDER
SUPREME COURT, NEW YORK COUNTY and      :
ANDREW M. CUOMO, ATTORNEY GENERAL OF THE:
STATE OF NEW YORK,                      :
                        Respondents.    :
                                        :
----------------------------------------X

APPEARANCES:

For Petitioner:
Robert M. Radick
Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.
565 Fifth Avenue
New York, New York 10017

For Respondents:
Alyson J. Gill
Leilani Rodriguez
Attorney General of the State of New York
120 Broadway, 12th Floor
New York, New York 10271

DENISE COTE, District Judge:

    On December 22, 2010, Cecille Villacorta ("Villacorta")

filed this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 (the "petition").  Respondents contend that the

petition should be denied, principally for failure to exhaust

state court remedies.  For the following reasons, the petition

is denied.

BACKGROUND

From 1998 until 2006, petitioner was employed as a sales associate in the fine jewelry department of the Saks Fifth Avenue department store ("Saks") in Manhattan.  Villacorta's employment with Saks ended on January 30, 2006, when she was arrested at the store.  Villacorta was subsequently indicted on two theories of larceny:  (1) that she stole from Saks by providing customers with unauthorized credits that did not correspond to actual purchases of merchandise (the "credit theory"); and, (2) that by concealing credits and discounts, Villacorta inflated her net sales figures, which were used to calculate her bonus, and thereby received a windfall of approximately $48,000 in bonus payments from Saks.  Villacorta's habeas claims are based on both the trial court and the prosecution's conduct, beginning during the pretrial proceedings.

A. Pre-Trial Proceedings

On May 7, 2007, Acting Justice Gregory Carro of the Supreme Court of New York County held a conference regarding Saks' motion to quash subpoenas that petitioner's attorneys had served for business records.  Among the requested documents were records reflecting the register transactions of other employees

of the fine jewelry department.  Defense counsel asserted that
it needed these documents to respond to the prosecution's
argument that Villacorta's conduct must have been "[f]raudulent
because nobody else [operated] the way she did."  The court held
that, while the prosecution could establish Saks' proper
procedures, evidence of other sales associates' specific
register transactions was irrelevant and inadmissible.  At three
subsequent conferences, defense counsel requested and the court
again rejected the petitioner's application for disclosure of
register transactions by other Saks employees.[1]  The court also
denied petitioner's alternative proposal:  that a defense expert
be permitted to observe Saks' employees run certain queries on
the Saks' computer system.


B. Trial Proceedings

     Trial commenced on February 26, 2009.  During its case-in-
chief, the prosecution elicited testimony from Randi Riley

---

[1] At a May 14, 2007 discovery conference, defense counsel renewed
its application after the prosecution stated that "just the
defendant and no one else in the store" used discounts and
credits in this way.  Next, at a July 24, 2007 conference,
defense counsel argued that if given access to the "Saks'
computer" it could "show [] somewhat widespread use" of
Villacorta's practices, which "would corroborate [Villacorta's]
testimony . . . that she was in fact authorized to do this very
way of crediting by the people who were at Saks."  Finally, at a
pre-trial conference on June 19, 2008, the court again refused
Villacorta's request for this data.

3

("Riley"), a former manager in Saks' Asset Protection
Department, that she had "reviewed twenty-three associates in
the Fine Jewelry Department" and that "none of the other twenty-
three were doing the exact same thing" as Villacorta.  Despite
defense counsel's objection, the prosecution was permitted to
continue its line of questioning.  Riley testified that while
seven of the associates whose records she examined had completed
transactions similar to Villacorta's, the other associates'
credits were accompanied by corresponding "offsetting
purchases."  Riley testified that, by contrast, she could not
find any corresponding purchases for Villacorta's credits.

On the fourth day of trial, the prosecution notified
defense counsel that it would call two additional witnesses --
current Saks associates -- to testify that "they didn't do
things the way Cecille did."  Defense counsel objected that the
court had already found that other sales associates' practices
were irrelevant.  After hearing argument on the issue, the court
held that the additional witnesses could not be questioned about
the "actual procedure of giving credit," but could be questioned
regarding "associate training on how they do register
transactions."  Pursuant to this ruling, Iwona Makowicz and
Kishan Nainani each testified that they had been trained not to
process a return without the merchandise and the receipt being

4

present in the store.  Nainani further testified that he had been trained to process return transactions using only his own sales associate identification number and the date of the original purchase.

Finally, during summations, the prosecution reiterated that Villacorta was the only sales associate in Saks' fine jewelry department who processed credits in the manner charged as grand larceny.  For instance, the prosecution argued that Villacorta's conduct must not have been authorized since "she's the only [sic] who did it this way."[2]  When defense counsel objected to these references, the court instructed the jury of its obligation to render a decision based on the evidence presented at trial rather than summation arguments.

C. The Verdict and Sentence

On March 9, 2009, the jury returned a verdict convicting Villacorta of the third-degree grand larceny count based on her receipt of inflated bonuses, and 144 counts of falsification of business documents.  Petitioner was acquitted of the grand larceny counts based on the credit theory.  On July 6, Villacorta was sentenced to ninety days in prison, to be

---

[2] At another point, the prosecution told the jury that it had "heard testimony from Randi Riley that [Villacorta] was the only [sic] who did it this way."

followed by five years of probation.  She was also ordered to perform 100 hours of community service and to pay a $96,000 fine.


D. Post-Trial Proceedings

On December 6, 2009, Villacorta filed a brief in the Appellate Division, First Department, claiming:

> (1) the verdict was against the weight of the evidence; (2) the court improperly denied access to Saks' computer database ["Database Claim"]; (3) the court erred in not allowing petitioner to view the records of other Saks' employees ["Records Claim"]; (4) the court erred in allowing Randi Riley to testify about other Saks' sales associates ["Testimony Claim"]; (5) the court and prosecution's treatment of a defense witness constituted reversible error; (6) the prosecutor made improper summation comments about other sales associates ["Prosecutorial Misconduct Claim"]; and (7) the jury's verdict was repugnant.

In her second claim of error -- the Database Claim -- Villacorta alleged that the lower court's denial of the defense's motion for access to Saks's computer database constituted "reversible error because the defendant's request was wholly permissible under the relevant laws and necessary to effectuate Ms. Villacorta's Sixth Amendment rights." Specifically, the brief alleged that the lower court's decision abrogated the "Sixth and Fourteenth Amendments of the United States Constitution which guarantee the defendant the right to

compulsory process of witnesses and other evidence favorable to the defense."[3]

Next, in her third claim of error -- the Records Claim -- Villacorta asserted that the trial court "committed reversible error when it denied the defense's request for the records of other salespeople at Saks" on the basis that this information was "irrelevant."  This section of Villacorta's appellate brief does not refer to the U.S. Constitution or federal caselaw. Similarly, Villacorta's fourth claim -- the Testimony Claim -- fails to cite any federal law.

On September 28, 2010, the Appellate Division denied Villacorta's appeal.  People v. Villacorta, 76 A.D.3d 911 (1st Dept. 2010).  With respect to the Database and Records Claims, the Appellate Division found that:

> [t]he court properly exercised its discretion in restricting, to matters relevant to the charges, defendant's discovery of her employer's computerized records . . . .  Defendant's subpoena duces tecum was overbroad.  Although afforded an opportunity to make more targeted discovery requests she failed to do so. Instead she requested an impermissibly open-ended fishing expedition into the company's records based on speculation that relevant information might be found. Defendant received extensive discovery as to relevant

---

[3] The only other reference to federal caselaw in petitioner's Appellate Division brief is in the discussion regarding her fifth claim of error, where Villacorta alleged that "substantial interference with a defense witness' [sic] free and unhampered choice to testify violates a defendant's constitutional right to due process."

> matters, and there is no reason to believe she was
> deprived of any exculpatory or impeaching evidence.

Id. at 911 (citation omitted).  The Appellate Division also

summarily denied petitioner's Testimony and Prosecutorial

Misconduct Claims, holding that it had "considered and rejected

defendant's challenges to the court's evidentiary rulings and

the prosecutor's summation."  Id. at 912.

On October 6, petitioner sought leave to appeal in the New

York Court of Appeals and a stay of execution of the sentence

pending appeal.  On November 17, petitioner filed a supplemental

leave in which she argued that by denying her access to the

records of other sales associates' transactions and admitting

testimony based on those records, the trial court violated the

petitioner's Fifth, Sixth, and Fourteenth Amendment rights to

due process, to confront and cross-examine opposing witnesses,

and to present a defense.  The Court of Appeals denied the

petitioner's application for leave to appeal on December 14,

after finding that her appeal did not present any "question of

law . . . which ought to be reviewed."

On December 22, Villacorta filed this petition and on

December 23, she filed a declaration requesting a stay of her

surrender.  On December 29, after hearing oral argument, the

Court denied Villacorta's request for a stay.  Villacorta

surrendered to serve her sentence on January 3, 2011, and was

released on March 1.  She was then detained by the United States
Immigration and Customs Enforcement and subsequently released.
On May 13, briefing on the petition became fully submitted.
According to the respondents' memorandum of law in opposition to
the petition, Villacorta is currently at liberty, but remains
under the supervision of the Department of Probation.

DISCUSSION

Villacorta contends she was denied a fair trial in
violation of the Fifth, Sixth, and Fourteenth Amendments of the
U.S. Constitution based on the state trial court's decisions to:
(1) deny her repeated requests for records of transactions by
other Saks' sales associates; (2) permit the prosecution to
elicit testimony at trial from Riley that Villacorta was the
only associate who engaged in the allegedly suspect
transactions; and, (3) permit the prosecution to argue during
summation that Villacorta was the only sales associate to
conduct transactions in this way.[4]  Respondents argue that

---

[4] Villacorta asserts that the three claims of error raised in the
petition, should not be considered as individual claims but
rather as a "series of erroneous and increasingly prejudicial
rulings" that

> deprived [petitioner] of access to highly critical
> evidence, that the trial court allowed this evidence
> to be presented to the jury without its disclosure to
> Ms. Villacorta, and that the prosecutor took unfair

Villacorta failed to raise her first and second claims before the state court, and they must therefore be deemed procedurally defaulted.  Finally, respondents argue that Villacorta's third claim should be denied since the state court's decision to permit the prosecutor's disputed summation remarks was neither contrary to, nor an unreasonable application of, Supreme Court law.

I.   Villacorta Failed to Exhaust Her Discovery Claim and Her
     Claim Regarding Riley's Testimony.

     The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 103-132, 110 Stat. 1214, provides that federal courts may not grant a petition for habeas corpus unless "the applicant has exhausted the remedies available in the courts of the state" or, "there is an absence of available State corrective process."  28 U.S.C. §§ 2254(B)(1)(A), (B)(i). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged

_____

     advantage of the crippling limitations imposed on Ms.
     Villacorta by making repeated comments on summation in
     which he urged the jury to convict Ms. Villacorta
     based on the very evidence that neither she nor the
     jury had ever seen.

This combined claim, however, is clearly unexhausted, as it was not raised with the Appellate Division.

violations of its prisoners' federal rights." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (citation omitted). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc). While a state petitioner is not required to cite "chapter and verse of the Constitution" to satisfy this requirement, she must present her challenge "in terms that are likely to alert the state courts to the claim's federal nature." Carvajal, 633 F.3d at 104 (citation omitted). This requirement may be satisfied by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in fact like situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. (citing Daye, 696 F.2d at 194).

"If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally defaulted," federal habeas courts "must deem the claim procedurally defaulted." Id. (citation omitted). Unless a petitioner can demonstrate "cause for the default and

prejudice" or "actual[] innocen[ce] of the crime for which he was convicted," dismissal for a procedural default -- unlike dismissal for failure to exhaust state remedies -- "amounts to a disposition of the habeas claim on the merits."  Id. (citation omitted).

Villacorta's first two claims -- alleging federal constitutional violations based on the trial court's decision: (1) to deny Villacorta's demand for other associates' sales receipts; and, (2) to permit Riley to testify regarding other associates' transactions -- must be denied based on the petitioner's failure to exhaust state remedies.  Although the petitioner raised each of these evidentiary determinations with the Appellate Division, they were not fashioned as federal constitutional claims.  Petitioner did not cite Supreme Court case law, the Constitution, or constitutional principles in support of these claims, and she did not rely on state cases "employing constitutional analysis in fact like situations." Carvajal, 633 F.3d at 104 (citation omitted).

Petitioner also failed to draft the claims on appeal in such a way that they "call[ed] to mind a specific right protected by the Constitution," nor did she allege "a pattern of facts that is well within the mainstream of constitutional litigation."  Id. (citation omitted).  Instead, petitioner's

claims were plainly based on alleged violations of state
discovery and evidentiary law.  Villacorta claimed that the
trial court "committed reversible error" when it denied her
request for the records of other salespeople, since it "based
its ruling on its mistaken opinion that these records were
irrelevant."  Moreover, the manner in which the Appellate
Division addressed Villacorta's claims confirms that it viewed
her appeal as being predicated on state rather than federal law.
Instead of discussing federal law, the Appellate Division
opinion emphasized a state trial court's discretion to restrict
discovery and make evidentiary rulings.

      Although petitioner failed to exhaust her first two claims,
she cannot return to state court to exhaust them as she has
already received the one direct appeal to which she is entitled.
See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) ("New York
procedural rules plainly bar petitioner from attempting to raise
his . . . claims . . . because he has already made the one
request for leave to appeal to which he is entitled.").  State
court collateral review is also barred since the claims could
have been raised on direct review.  N.Y. Crim. Proc. Law
§ 440.10(2)(c).

      Given that a state court would find the petitioner's first
two claims to be procedurally defaulted, this Court may only

reach the merits if Villacorta demonstrates:  (1) cause for default and actual prejudice; or, (2) that the failure to consider the claims will result in a fundamental miscarriage of justice because she is actually innocent.  Tellingly, petitioner does not assert that she can establish either cause and prejudice, or actual innocence, nor could she.  In order to demonstrate "cause," Villacorta would need to show "some objective factor external to the defense" that "impeded counsel's effort to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999) (citation omitted).  Petitioner has made no such allegation.  Also, petitioner has not proffered any new evidence that would establish that she is actually innocent.  See House v. Bell, 547 U.S. 518, 536-37 (2006).

Petitioner principally makes three arguments in favor of finding that Villacorta exhausted the state court remedies available to her.  First, petitioner asserts that by referring to federal law in her appeal from the trial court's decision to deny her request for access to the Saks' computer database (the Database Claim), Villacorta exhausted her federal claim arising from the trial court's decision to deny her access to other employees' transaction records (the Records Claim).  This argument is unavailing.  These claims appeared in different

sections of petitioner's brief[5] to the Appellate Division, were
based on different legal theories,[6] and Villacorta only
referenced federal law with respect to the Database Claim.

Next, petitioner contends that even without reference to
the Database Claim, the Records Claim was stated in terms so
particular as to call to mind specific constitutional rights.
Villacorta emphasizes that in her appellate brief she argued
that, (1) the denial of her discovery request "removed one of
the primary ways that [petitioner] could have proven her
innocence"; and, (2) prevented her from effectively cross-
examining Riley.  Since the inability to secure pretrial
discovery generally does not state a violation of the Sixth
Amendment Confrontation Clause, neither of these statements
regarding the trial court's discovery rulings was adequate to

---

[5] Villacorta suggests that by appending a transcript of a trial
court proceeding in which defense counsel mentioned a link
between the records and the database, the petitioner gave the
Appellate Division notice that the records were a subset of the
information on the Saks' database.  This argument lacks merit.
In her brief to the Appellate Division, Villacorta did not
mention the records as a reason for wanting access to the
database.  Furthermore, the Appellate Brief did not reference
the relevant portion of the appendix in support of the Database
Claim.

[6] In support of the Database Claim, Villacorta emphasized her
right to obtain or access electronic evidence held by a third
party.  Petitioner's Records Claim, by contrast, was based on
the theory that Villacorta needed this information to contradict
the defendants' argument that her conduct was unauthorized and
that "no other salesperson at Saks did them the same way" as
petitioner.

put the Appellate Division on notice of an alleged
constitutional violation.  Pennsylvania v. Ritchie, 480 U.S. 39,
52 (1987) (the Confrontation Clause is not a "constitutionally
compelled rule of pretrial discovery," rather it is a "trial
right, designed to prevent improper restrictions on the types of
questions that defense counsel may ask during cross
examination").  See also Watson v. Green, 640 F.3d 501, 510 (2d
Cir. 2011) ("The extent of cross-examination rests in the sound
discretion of the trial judge. . . . A court's decision to
restrict cross-examination will be reversed only when the court
has abused its broad discretion." (citation omitted)).

Finally, Villacorta contends that she alleged a pattern of
facts well within the mainstream of constitutional litigation by
claiming that she needed the records of other sales associates
to "defend against" the prosecution's argument that "no other
salesperson at Saks performed . . . transactions in the manner
of Villacorta"; and, (2) that Riley's testimony "permit[ted] a
biased source to offer untested evidence characterizing Ms.
Villacorta's conduct as abnormal and deviant."  This argument
also fails.

The only case upon which Villacorta relies is Holland v.
Scully, 797 F.2d 57 (2d Cir. 1986).  In Holland, the Second
Circuit held that failure to instruct the jury on an element of

liability is a "factual pattern [that] falls so squarely within
the fundamental due process rule that the prosecution prove
every element of the offense, . . . that no reasonable jurist
could doubt that the defendant's claim implicated a
constitutional right." Id. at 65 (citation omitted).  In
reaching this holding, the Second Circuit stressed that although
petitioner failed to cite "federal or state constitutions" he
"adequately alerted the state court to his constitutional
claims" since he alleged a "factual pattern that should have
called to mind a specific constitutional challenge -- that is,
elimination of a requisite element of the crime alleged, in
violation of the due process clause." Id.  Villacorta, by
contrast, has not alleged facts that bring to mind a specific
constitutional challenge.  Rather, her factual allegations are
more of the "vague" or "talismanic" variety that the Second
Circuit found inadequate to notify state courts of federal
constitutional claims.  Id.  Moreover, as discussed supra, fact
patterns alleging limits on pretrial discovery and the extent of
cross-examination generally do not state federal constitutional
claims.  Consequently, it is not surprising that petitioner has
failed to identify any precedent in which similar facts were
found to be within the mainstream of constitutional litigation.

II.  State Court's Rejection of Villacorta's Claim of
     Prosecutorial Misconduct Withstands AEDPA Review.

     On direct appeal, Villacorta couched her prosecutorial

misconduct claim solely in state law terms.  Nevertheless,

respondents concede that this claim has been exhausted since "a

claim of prosecutorial misconduct on summation calls to mind

specific rights protected by the constitution" and therefore

this issue was fairly presented to the state court.  See

Carvajal, 633 F.3d at 104.

     AEDPA modified the standard under which federal courts

review § 2254 petitions where the state court has reached the

merits of the federal claim.  Habeas relief may not be granted

unless the state court's decision was "contrary to, or involved

an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States" or "was

based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(1), (d)(2).

     A state court decision involves an "unreasonable

application" of Supreme Court precedent when the state court

"identifies the correct governing legal principle from the

Supreme Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case."  Williams v.

Taylor, 529 U.S. 362, 407 (2000).  For a state court's

18

application of federal law to be unreasonable, "[s]ome increment of incorrectness beyond error is required." Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000) (citation omitted).

State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. at § 2254(e)(1). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted).

Villacorta argues that the prosecutor improperly argued on summation that no other sales associate conducted transactions in the same manner as petitioner. "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." United States v. Young, 470 U.S. 1, 11 (1985); accord United States v. Newton, 369 F.3d 659, 680 (2d Cir. 2004) (citing Young, 470 U.S. at 11). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted). "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id.

19

(citation omitted).   "In other words, the Court must consider the probable effect the prosecutor's [remarks] would have on the jury's ability to judge the evidence fairly."   <u>Young</u>, 470 U.S. at 12.   The Second Circuit has held that when

> assessing whether a defendant has sustained substantial prejudice, [courts] consider the severity of the alleged misconduct, any curative measures taken by the trial court, and the likelihood of conviction absent the challenged conduct.

<u>Newton</u>, 369 F.3d at 680.

Even assuming that the prosecutor's remarks were improper, petitioner has failed to demonstrate that these remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   <u>Darden</u>, 477 U.S. at 181 (citation omitted).   The trial court repeatedly reminded the jury that the prosecutor's remarks were only argument and, there was ample evidence in the record to convict Villacorta without reference to the challenged conduct.   In any event, Villacorta has not shown that the Appellate Division's rejection of this claim was an unreasonable application of clearly established federal law, as determined by the Supreme Court.


<u>CONCLUSION</u>

The petition for a writ of habeas corpus is denied.   The Clerk of Court shall close this case.   As the petition makes no

substantial showing of a denial of a constitutional right, a
certificate of appealability will not issue.  28 U.S.C. § 2253.


       SO ORDERED:

Dated:     New York, New York
          July 29, 2011

                              _____
                                  DENISE COTE
                  United States District Judge